**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CIVIL ACTION |
| | § | NO. 4:00-CV-483-Y |
| MEDICA-RENTS CO., *ET AL.* | § | |
| | § | Consolidated with |
| AND | § | CIVIL ACTION |
| | § | NO. 4:01-CV-198-Y |
| THE UNITED STATES OF AMERICA | § | |
| *ex rel*. RAMON B. CARTER and | § | |
| MICHAEL STOCKHAM | § | |
| | § | |
| v. | § | |
| | § | |
| MEDICA-RENTS CO., *ET AL.* | § | |

**ORDER GRANTING MOTION FOR ATTORNEYS' FEES, REFERRING
FEES AMOUNT TO MEDIATOR, AND APPOINTING MEDIATOR**

Pending before the Court is Defendants' (collectively, "Medica-Rents") Application for Attorneys' Fees [doc. # 478], filed April 7, 2006. After considering the motion, the response, the reply, the sur-reply, and Medica-Rents's additional evidence, the Court GRANTS the motion.

I. BACKGROUND

This case has a long and tortured history. In short, the government intervened in a qui-tam action and brought an independent action against Medica-Rents for allegedly over-billing Medicare for its nonpowered, palliative air mattress ("the ROHO") in order to receive higher payments under an allegedly incorrect and inapplicable code. The government raised claims for violations of the False Claims Act, unjust enrichment, and payment by mistake. On September 23, 2006, this Court granted Medica-Rents's motion

for summary judgment regarding the government's claim under the False Claims Act. Specifically, this Court concluded that there was no evidence that Medica-Rents's use of code E0277, which applied to powered alternating pressure mattresses, instead of code E1399, a miscellany code, to bill Medicare for the ROHO (1) constituted false or fraudulent conduct; (2) equated to a knowing submission of false claims; or (3) rose to the level of deliberate ignorance or reckless disregard of the truth. *United States v. Medica-Rents Co.*, 285 F. Supp. 2d 742, 769-75 (N.D. Tex. 2003). This Court denied Medica-Rents's and the government's motions for summary judgment on the government's claims for unjust enrichment and payment by mistake because fact issues precluded such a holding. *Id.* at 776-77.

However, after a nonjury trial, this Court entered findings of fact and conclusions of law that the government was not entitled to recovery under either common-law theory. Because the evidence showed that Medica-Rents received conflicting information from multiple representatives of Medicare regarding how to properly bill the ROHO and because the government never corrected its letter to Medica-Rents directing it to use code E0277 to bill for the ROHO, there was no payment by mistake. *United States v. Medica-Rents*, Nos. 4:00-CV-483-Y & 4:01-CV-198-Y, 2006 WL 247896, at *9-10. Further, unjust enrichment was not proven because in the absence of any mistake or error, it could not be shown that Medica-Rents was paid through its own use of fraud, duress, or the taking of undue advantage. *Id.* at *10. This Court further stated that because Medica-Rents prevailed on all causes of action, it was arguably entitled to an award of attorneys' fees. Medica-Rents now asserts that based on the government's bad faith in pursuing its

action against  Medica-Rents, it is entitled to attorneys' fees at the market rate.  *See* 28

U.S.C.A. § 2412(b) (West 1994).


## II. RIGHT TO ATTORNEYS'-FEES AWARD

The Equal Access to Justice Act ("the EAJA") provides a mandatory attorneys'-

fee award for a prevailing party.  *See id.* § 2412(d).  However, the prevailing party must

meet certain financial eligibility requirements and must show that the government's

position was not substantially justified or that special circumstances make an award

unjust.  *See id.*  Medica-Rents is candid that it does not meet the net-worth requirements

to seek attorneys' fees under § 2412(d).

But Medica-Rents argues that it is entitled to its attorneys' fees because the

government proceeded in this action in bad faith.  Indeed, the EAJA provides for a

narrow "bad faith and common benefit/common fund" provision for discretionary awards

in § 2412(b).  *Baker v. Bowen*, 839 F.2d 1075, 1080 & n.3 (5th Cir. 1988).  The bad-faith

exception allows an award where the government has acted in "bad faith, vexatiously,

wantonly or for oppressive reasons."  *Id.* at 1081 (relying on legislative history of EAJA).

This section of the EAJA allows awards at the market rate.  *See Knights of the Ku Klux

Klan Realm of La. v. E. Baton Rouge Parish Sch. Bd.*, 679 F.2d 64, 64 (5th Cir. 1982).  In

addition, § 2412(c)(2) provides that, if acting in bad faith, the administrative body itself,

rather than the Treasury, is liable for these fees.  *See Baker*, 839 F.2d at 1080.  This Court

may consider conduct both during and before the litigation, although any award may not

be based solely on the conduct that led to the substantive claim.  *See Perales v. Casillas*,

950 F.2d 1066, 1071 (5th Cir. 1992).

Medica-Rents offers multiple instances of bad-faith conduct by the government that warrant an award of attorneys' fees.  Although these instances and others as shown in the record are compelling and contribute to this Court's bad-faith finding, the Court will highlight the most glaring examples.

The United States intervened in the underlying qui-tam action mainly based on the allegations raised by three former employees of Medica-Rents.  These employees were not employed by Medica-Rents during the relevant time period and had no knowledge regarding the E0277 billings.  Further, Medica-Rents has convincingly detailed the questionable motives and reliability of relators Michael Stockham and Ramon Carter.  Indeed, it appears that Stockham, while lacking any personal knowledge of Medica-Rents's billing during the relevant time period, joined Carter's qui-tam action at the government's prompting.  The government clearly knew all of this information before it decided to intervene in the qui-tam action.  (Medica-Rents's Appl. at 10-15.) Although Stockham's and Carter's motives cannot automatically be imputed to the government, this indicates that the government decided to intervene based on information it knew could be faulty and unreliable.  Nevertheless, the government decided to file a wholly-unsupported claim of fraud under the False Claims Act against Medica-Rents.

During discovery, the government actively withheld crucial evidence from Medica-Rents:  (1) portions of Medicare's[1] 1997 investigation into Medica-Rents's billing that concluded restitution from Medica-Rents should not be sought and (2) evidence that code E0277, which the government consistently argued would never be

---

[1]The investigation was conducted by a regional insurance carrier that coordinated reimbursements for durable medical equipment under the Medicare program.

assigned to a nonpowered product, had been assigned to a different nonpowered mattress. The government did eventually produce the investigation file after Medica-Rents filed a motion to compel. But the nonpowered-coding evidence was discovered by Medica-Rents through its own litigation efforts. The government asserts that this evidence is "marginally relevant." (Gov't Resp. at 42.) Because one of the government's main assertions supporting its suit was that Medica-Rents knew it could not use E0277 because nonpowered products had never been assigned E0277 renders this argument marginal, at best.

Further, this Court has already stated the lack of any support for the government's claims under the False Claims Act. *See Medica-Rents*, 285 F. Supp. 2d at 768-75. The government's remaining common-law claims were tenuous. At trial, the government heavily relied on the fact that the letter Medica-Rents received from Medicare authorizing use of E0277 for the ROHO was a mistake. Based on this mistake, the government contended that it was entitled to reimbursement. There was little to no evidence at trial that the letter was a mistake. Indeed, it was uncontradicted that the letter would have been corrected if mistaken, but that the letter had never been corrected or withdrawn. This Court's findings and conclusions discuss the weakness of the government's common-law case. *See Medica-Rents*, 2006 WL 247896, at *9-11. Additionally, even though Medica-Rents offered to settle the case shortly before trial, the government flatly refused to consider any offer that was less than the amount sought in the government's complaint.

This case is troubling because the government put its full weight and authority behind a case that, upon examination, arises primarily out of personal animus and is

5

based on shaky evidence.  The government was aware of the tenuous nature of the case before intervening in the qui-tam action and brought claims that were either wholly without evidence (False Claims Act) or could not withstand even a cursory review of the admitted evidence (common-law claims).  Because of its unlimited power, the government, of all litigants, should pursue actions carefully and without passion or prejudice.  This case reveals the dangers of a government rents litigant set loose with no guidance or restrictions.  In light of the length of this litigation and the conduct of the government, this Court finds that the government acted in bad faith.

### III. AMOUNT OF ATTORNEYS' FEES

As to amount, Medica-Rents has requested $4,895,218.86 in attorneys' fees.  The government has raised arguments that this amount is either excessive or does not properly take into account nonrecoverable or duplicative charges.  After reviewing the separate briefing by the parties on this issue, the Court determines that this narrow issue—the proper amount of attorneys' fees due to Medica-Rents—should be referred to mediation.  Thus, the government and Medica-Rents are REFERRED FOR MEDIATION regarding the amount of attorneys' fees before the United States Magistrate Judge Charles Bleil, Eldon B. Mahon U.S. Courthouse, 501 West 10th Street, Fort Worth, Texas 76102, telephone number (817) 850-6690.  The mediation shall be conducted on a mutually agreeable date no later than 60 days from the date of this order.  Counsel are ORDERED to contact Magistrate Judge Bleil's chambers no later than three working days from the date of this order to arrange for scheduling the mediation.

Mediation is a mandatory but non-binding settlement conference, conducted with the assistance of a mediator.  Mediation is private, confidential, and privileged.  Named parties shall be present during the entire mediation process and corporate parties must be represented by an executive officer with authority to negotiate in good faith toward a settlement regarding the attorneys'-fees amount.  If the approval of an insurance company will be necessary to effectuate a settlement, then a representative of the insurance company with authority to approve any agreement reached by the parties shall participate in the mediation.  Counsel and the parties shall proceed in a good-faith effort to resolve this issue during the mediation proceedings.

SIGNED December 7, 2006.

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE